Filed 3/3/15  P. v. Boulware CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>ADRIENNE MARQUIS BOULWARE,<br><br>　　　　Defendant and Appellant. | C075063<br><br>(Super. Ct. No. 11F07238) |

　　　　A jury convicted defendant Adrienne Marquis Boulware of torture and second degree murder, acquitting her of first degree murder.  Sentenced to 15 years to life in state prison, defendant appeals, contending the prosecutor committed prejudicial misconduct during closing and rebuttal arguments to the jury.  Recognizing defense counsel failed to object to the prosecutor's statements thereby forfeiting her claim of

prosecutorial misconduct, she contends, in the alternative, counsel rendered ineffective assistance by failing to object. We reject this contention and affirm the judgment.[1]

FACTS

On September 14, 2011, the body of Audie Hogue was discovered in the parking lot of an abandoned car wash on Marysville Boulevard. He had been beaten to death. He had blunt force injuries to his head, neck, and torso and sustained internal injuries including multiple rib fractures, a pancreas almost split in two, and lacerations to his small intestines. His blood-alcohol content was 0.30 percent.

A mini mart's surveillance videotape from the night before showed defendant and Dawson going back and forth between the mini mart and the car wash several times, purchasing beverages during each visit to the mini mart. The videotape also showed Hogue, who had been panhandling earlier in the day in the mini mart's parking lot, staggering and barely able to get up off the curb, waving to someone across the street and then walking across the street to the car wash just after defendant and Dawson were seen walking towards the car wash. Hogue was never to be seen again on the videotape. Sometime between 8:30 and 9:30 a.m. the next day, the videotape showed defendant and Dawson at the mini mart, watching the officers investigate the crime scene at the car wash.

The jury heard tapes of a police interview with defendant, a pretext call defendant made to Dawson, and a secretly recorded conversation at the jail between defendant and Dawson and thereafter with police officers. Initially, defendant told officers she was not in the area but identified Dawson as beating Hogue. She then changed her story and denied responsibility, claiming she left with her friend Tennessee when Dawson started

---

[1] Codefendant Amoura Dominique Dawson was charged with and convicted of the same offenses as defendant and received the same sentence. They were tried together with separate juries. This appeal does not include Dawson.

2

to beat Hogue after he called Dawson a name. Defendant knew that Dawson had stomped Hogue "real bad," punching him more than 30 times and kicking him 50 to 65 times in the face and head. Defendant bought a beer for Dawson after the beating. When officers told defendant that her shoeprints were at the scene and her shoes would be checked for blood, defendant claimed she went back to the car wash to check on Hogue and sat him up. She said he had been injured on a cement block. During the pretext call, when defendant told Dawson the police were looking for her, Dawson disputed defendant's statement that defendant and Tennessee had left, claiming defendant had done the "most damage" to Hogue and they both had blood on their clothes and shoes. After the pretext call, defendant continued to deny to the police that she participated in the beating. During the subsequent jailhouse conversation, defendant admitted that she punched Hogue twice and kicked him in the stomach once. While defendant claimed Hogue hit Tennessee first, Dawson said defendant hit Hogue first and then Dawson and defendant both kicked and hit Hogue until he could not get up. Dawson stated that she had to pull defendant off of Hogue, that Hogue never got up, and that he was half dead when they left.

## DISCUSSION

Defendant contends that the prosecutor committed prejudicial misconduct during closing and rebuttal arguments to the jury by misstating the law and by urging the jury to convict based on her character. She recognizes that defense counsel failed to object and contends in the alternative that defense counsel rendered ineffective assistance. We reject her contention.

*Background*

In closing argument, the prosecutor did not discuss voluntary manslaughter. Instead, the prosecutor discussed first and second degree murder, focusing on the secretly taped discussion between defendant and Dawson, the subsequent simultaneous questioning of defendant and Dawson by the officers and the video surveillance tapes

3

from the mini mart. The prosecutor argued that while Dawson was at the mini mart after stomping Hogue (surveillance videotape showed Dawson had limped across the street to the mini mart), defendant was still at the car wash with Hogue "as he's laying on the ground, bleeding from his head, blood gushing everywhere, hanging out with Tennessee like it is nothing. You get the picture of what type of people you are dealing with. [¶] A man is laying there, head busted open, bleeding, blood everywhere, she is hanging out like it is nothing. These are the type of people you are dealing with." The prosecutor also argued, "Remember, for the last 15 minutes after Dawson walks across the street, they are hanging out at the car wash. Again, Audie Hogue's head plastered. 15 minutes they are hanging out chilling, while this man is laying there looking like this. This is the type of people the defendants are. This is who they are." There was no objection.

Defense counsel argued that the evidence was wanting and that defendant did not commit the crimes. The defense theory was that after defendant left the car wash, Dawson returned and continued to beat Hogue or someone else went to the car wash and killed Hogue. Defense counsel argued that the prosecutor had not proven what happened or when the injuries were inflicted on Hogue. Defense counsel disputed the prosecutor's description of the crimes, stating it was "conjecture" that defendant stood by and watched Hogue die. Defense counsel claimed that the detectives used deception to obtain defendant's statements and that defendant used deception in return. He argued the jury could not find defendant guilty because it believed she was an evil person and that the trial was not about her character but about her state of mind. He argued only briefly that the jury should consider voluntary manslaughter based on heat of passion because defendant did not act with a reasonable and sober mind in reaction to Hogue's verbal assault of Dawson and physical assault on Tennessee.

In rebuttal, the prosecutor argued that second degree murder at a minimum had been proven. The prosecutor did not discuss the type of person he believed defendant to be. In discussing voluntary manslaughter, the prosecutor argued:

4

"[Defense counsel] briefly mentioned voluntary manslaughter.

"I'm going to briefly tell you why it doesn't apply.

"Three elements. The defendant was provoked. Okay. Someone calls you a name, a n[-----], a b[----], that's some provocation. Subjective.

"Number two, as a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured her reasoning or judgment. Subjective. So it is possible, okay?

"Number three is the objective part, objective. The provocation would have caused a person of average disposition to act rashly and without due deliberation. That is, from passion rather than from judgment. That's the average person, not the average drinking person, average Jane, average Joe.

"Now, would the average person react the way the defendants did? Somebody calls you a n[-----], somebody calls you a b[----], how would the average person react? The average person might get mad. The average person might throw a punch, but the average person does not stomp a man up to 60 times. An average woman does not stomp a man up to 60 times. You can think of the worse name anybody could ever call you, but the average Joe and the average Jane does not stomp a man to lacerate his pancreas. Average Jane, average Joe gets mad, throws a punch, but you don't beat and punch a man where your hands get bloody, where you hurt your foot, kick him in the nuts, stomp him in the head, 40, 50, 60 times? No, that's why.

"See, number three is, I call it the 'I get it' section because the average Jane, average Joe says I get it. I can see how that can happen. I can see how a person based upon why they did snapped and did all these things. You can't say that simply because somebody calls you a name. You can't say that because the average person doesn't go off like that and go off like that and go off like that. They don't. That's why [defense counsel] didn't want to talk about it, because it doesn't apply." Defense counsel did not object.

5

The court properly instructed the jury on voluntary manslaughter in the language of CALCRIM No. 570. The jury did not have any questions during deliberations.

*Analysis*

Defense counsel did not object or seek a curative admonition at trial and nothing suggests an admonition would have been futile; thus, defendant forfeited her claim of prosecutorial misconduct. (*People v. Linton* (2013) 56 Cal.4th 1146, 1205.) Nevertheless, since defendant contends counsel rendered ineffective assistance by failing to object to the misconduct, we also consider and reject her claim challenging counsel's performance.

To establish ineffective assistance of counsel, defendant must demonstrate counsel's performance was deficient and that defendant suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d 674, 693, 696]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218 (*Ledesma*).)

"In evaluating a defendant's claim of deficient performance by counsel, there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' [citations], and we accord great deference to counsel's tactical decisions. [Citation.]" (*People v. Frye* (1998) 18 Cal.4th 894, 979, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Moreover, " ' "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citation.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding. [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

" ' "[F]ailure to object seldom establishes counsel's incompetence" ' " (*People v. Majors* (1998) 18 Cal.4th 385, 403) and counsel is not required to make meritless objections. (*People v. Anderson* (2001) 25 Cal.4th 543, 587.)

To demonstrate prejudice, defendant must show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*Ledesma, supra,* 43 Cal.3d at pp. 217-218; *People v. Maury* (2003) 30 Cal.4th 342, 389.) "Generally, . . . prejudice must be affirmatively proved." (*Ledesma, supra*, 43 Cal.3d at p. 217.)

The prosecutor correctly recited the objective part of the state of mind required for voluntary manslaughter. But immediately thereafter, in discussing the objective part, the prosecutor argued that there was insufficient provocation for the average person to have stomped, kicked, and hit Hogue 40, 50, or 60 times. This may have caused confusion since "[t]he proper focus is on the defendant's state of mind, not on his particular act." (*People v. Beltran* (2013) 56 Cal.4th 935, 949; see also *People v. Najera* (2006) 138 Cal.App.4th 212, 223 ["[h]ow the killer responded to the provocation and the reasonableness of the response is not relevant to the sudden quarrel or heat of passion"].) The record does not reflect the reason for defense counsel's failure to object but there is an explanation. Defendant's defense was that after defendant left the car wash, Dawson returned or someone else went to the car wash and inflicted the fatal blows to Hogue and that defendant was not guilty of murder or manslaughter.

In any event, we do not find any prejudice. The prosecutor's discussion was brief. Further, the trial court properly instructed the jury on the objective element for the state of mind for voluntary manslaughter (CALCRIM No. 570; *People v. Beltran, supra,* 56 Cal.4th at pp. 954-956) and instructed that where counsels' comments conflicted with the instructions, the jury was to follow the instructions. (CALCRIM No. 200.) We presume the jury followed the instructions. (*People v. Boyette* (2002) 29 Cal.4th 381, 436.) Moreover, there was not any evidence that Hogue's use of a racial and sexist slur towards Dawson or Hogue's use of force upon Tennessee provoked anger in defendant. Further,

7

after beating Hogue, defendant and Dawson fled from the car wash. Defendant has failed to demonstrate prejudice from counsel's failure to object to the prosecutor's argument.

The prosecutor's reference to defendant and Dawson as people who were cold and callous was fair comment on the evidence. The evidence supported the prosecutor's argument that after beating Hogue to a pulp, defendant and Dawson calmly went back to the mini mart for another beverage. Any objection would have been meritless. Further, in closing, defense counsel responded to the prosecutor's statements, arguing that the trial was not about defendant's character but about her state of mind and claiming defendant was not an evil person. Defendant has failed to demonstrate that counsel's performance was deficient.

We reject defendant's claim of ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.


         NICHOLSON   , Acting P. J.


We concur:


  HULL    , J.


  MURRAY   , J.


8